UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL G.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-00545-JMS-DLP |
| ) | |
| ANDREW M. SAUL, Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Michael G. applied for disability insurance benefits from the Social Security Administration ("SSA") on August 1, 2016, alleging an onset date of January 15, 2016. [Filing No. 5-2 at 16.] His application was initially denied on October 12, 2016, [Filing No. 5-2 at 111], and upon reconsideration on March 22, 2017, [Filing No. 5-2 at 116]. Administrative Law Judge Kevin M. Walker (the "ALJ") held a hearing on October 10, 2018. [Filing No. 5-2 at 35-85.] The ALJ issued a decision on January 22, 2019, concluding that Michael G. was not entitled to receive benefits. [Filing No. 5-2 at 13.] The Appeals Council denied review on December 18, 2019. [Filing No. 5-2 at 1.] On February 18, 2020, Michael G. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Michael G. was 54 years of age at the time he alleges his disability began. [*See* Filing No. 5-3 at 22.] He has completed high school, earned a real estate license, and previously worked in industrial manufacturing. [Filing No. 5-4 at 9-10.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Michael G. was not disabled. [Filing No. 5-2 at 26.] Specifically, the ALJ found as follows:

- At Step One, Michael G. had not engaged in substantial gainful activity[3] since January 15, 2016, the alleged onset date. [Filing No. 5-2 at 19.]

- At Step Two, he "had the following severe impairments: multiple sclerosis, peripheral neuropathy, hand tremors, restless leg syndrome, hereditary hemochromatosis, and obesity." [Filing No. 5-2 at 19 (citation omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 5-2 at 21.]

- After Step Three but before Step Four, Michael G. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can lift, carry push and pull twenty pounds occasionally and ten pounds frequently. The claimant can stand or walk for up to two hours in an eight-hour workday and sit for up to six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs but never ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant must have no exposure to concentrated wetness, unprotected heights or hazardous machinery. The claimant must operate no foot controls with the bilateral lower extremities. He must ambulate with the use of a cane." [Filing No. 5-2 at 22.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Michael G.'s RFC, he was capable of performing his past relevant work as an order clerk.  [Filing No. 5-2 at 25.]

## III.
### DISCUSSION

Michael G. makes two assertions of error, arguing that: (1) the ALJ's RFC finding failed to accommodate his obstructive sleep apnea, morbid obesity, depression, anxiety, and pain; and (2) the ALJ should not have relied on the VE's testimony that he was capable of performing his past relevant work.  The Court will address the arguments as necessary to resolve the appeal.

Additionally, before the Court is: (1) Michael G.'s Objection to the Record and Report to the Court, [Filing No. 13], (2) the Commissioner's Motion for Leave to File a Supplemental Record, [Filing No. 15], and (3) the Commissioner's Motion for Leave to File a Surreply, [Filing No. 16].  The Court will address these procedural motions first, before turning to the substantive issues raised by Michael G.

**A. Procedural Matters**

Beginning with the procedural issues before the Court, none are relevant to the Court's disposition.  As a matter of formality, Michael G.'s objection, [Filing No. 13], is rendered **MOOT** by the Commissioner's motion to supplement the record, [Filing No. 15].  Both the Commissioner's motions for leave, [Filing No. 15; Filing No. 16], are **GRANTED.**

However, Michael G.'s counsel is advised that reserving arguments until her reply—and almost assuredly inviting a surreply—should be a rare occurrence.  *See Meek v. Astrue*, 2010 WL 3258319, at *7 (S.D. Ind. Aug. 16, 2010) ("Arguments raised for the first time in a reply brief are forfeited.") (citing *Narducci v. Moore*, 572 F.3d 313, 324-25 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited")).  Counsel did not demonstrate the need for such a practice in this case.  *See id*.  At a minimum, counsel could

have described her argument in more detail in her initial brief to provide the Commissioner the opportunity for a meaningful response. [*See* Filing No. 7 at 11.] She could have also explained the relevance of needing to resolve whether "objections" to the VE's testimony had been filed during the administrative case. [*See* Filing No. 7 at 11.] As presented by counsel, the reserved argument would be forfeited. Regardless, the argument had no bearing on the Court's disposition of the case.

> **B. Substantive Issues**
>
> > *1. Mental Limitations*

Michael G. asserts that the ALJ did not properly consider all his impairments. [Filing No. 7 at 8.] Specifically, he contends that the ALJ did not: (1) accommodate his severe impairment – hand tremors, with manipulative limitations, (2) evaluate his morbid obesity in any way, (3) find his diagnoses of major depressive disorder, anxiety disorder, and somatization disorder to be severe impairments, or (4) evaluate his fatigue symptoms from a combination of obstructive sleep apnea, multiple sclerosis, and obesity. [Filing No. 7 at 8.] Michael G. contends that neuropsychological testing in February 2018 established severe mental impairments. [Filing No. 7 at 9.] He asserts that he began recommended mental health therapy in April 2018, and the ALJ did not confront the treatment evidence following the last state agency review, nor did the ALJ assess any mental limitations. [Filing No. 7 at 9.]

The Commissioner contends that the ALJ supported his determination that Michael G.'s mental impairments were not severe by considering Michael G.'s medical records and subjective complaints. [Filing No. 9 at 23.] The Commissioner asserts that no medical opinion assessed relevant functional limitations. [Filing No. 9 at 23.] The Commissioner contends that the ALJ acknowledged Michael G.'s depression and anxiety but found no limits in functioning based on

normal examination findings and his activities of daily living. [Filing No. 9 at 23-24.] The Commissioner also contends that the updated neuropsychological evaluation and limited counseling did not support functional limitations. [Filing No. 9 at 24-26.] The Commissioner contends further that Michael G. has asserted the need for only vague limitations based on his diagnoses. [Filing No. 9 at 26.]

Michael G.'s reply and the Commissioner's surreply do not address Michael G.'s mental functioning.

The ALJ explained that he found that Michael G.'s "medically determinable mental impairments of depression and anxiety, considered singly and in combination, [did] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non[-]severe." [Filing No. 5-2 at 20.] The ALJ found no more than mild limitations in any of the functional domains used to evaluate the severity of a claimant's mental impairments. [Filing No. 5-2 at 20-21.] The ALJ explained, in part, that:

> In February 2017, the results of mental status testing revealed some difficulty in attention, concentration and memory. However, the examiner noted that the claimant's thoughts are dominated by his physical health and what he is unable to do (Exhibit 15F). Subsequent clinical reports note the claimant's normal thought content with no reports of clinical manifestations noted in the consultative examination report (Exhibit 20F at 11).

[Filing No. 5-2 at 20.]

The ALJ did not discuss the February 2017 psychological consultative examination further. The examiner found that Michael G.'s "overall performance on the cognitive tasks was fair to poor. His effort was fair." [Filing No. 5-7 at 89.] The examiner assessed that Michael G.'s "[j]udgment [was] fair, but may deteriorate in emotional states and in real social settings. Insight is fair to poor." [Filing No. 5-7 at 90.] Concerning "[s]ustainability of [a]ctivity: [h]e seemed able to sustain only a fair level of focus and cognitive effort for th[e] hour. He became a bit confused and

7

had trouble remaining focused on the subject." [Filing No. 5-7 at 90.] "Impulse control seem[ed] fair, but may deteriorate in emotional states and real social settings." [Filing No. 5-7 at 90.] "His affect was appropriate to verbal content, but he had trouble remaining composed." [Filing No. 5-7 at 90.] "His thoughts [were] dominated by his physical health and what he [was] no longer able to do. His thoughts were tangential and circumstantial. He complained about his health. He had trouble remaining focused and seemed annoyed when he was refocused." [Filing No. 5-7 at 90.] The clinical psychologist diagnosed a mood disorder secondary to Michael G.'s physical health including multiple sclerosis. [Filing No. 5-7 at 91.]

The ALJ's evaluation of Michael G.'s mental impairments was consistent with the latest state-agency reviewing consultant's assessment. On March 26, 2018, the reviewing psychologist found that Michael G.'s mood disorder was not severe with only mild limitations with social interaction, concentration, persistence, and maintaining pace. [Filing No. 5-8 at 5-17.] The expert's review considered the consultative examiner's findings, as well as the lack of any formal mental health treatment. [Filing No. 5-8 at 19.]

Following the last expert's review, the record was updated by submission of a summary of findings from a comprehensive neurophysiological evaluation that was completed in February 2018. The report described the findings, including:

> Personality and emotional functioning revealed elevated FBS validity scale which is an endorsement of symptoms that do not occur in true clinical populations. Results such as these are due to two possibilities: (1) a "desperate cry for help" with symptom magnification due to a perception of issues not being addressed, or (2) a conscious and willful distortion to present as being worse than one actually is for some secondary gain (i.e. money, avoiding responsibilities, receiving nurturing, etc.).
>
> Clinical scales were elevated and indicative of either no organic pathology, or if they do exist an exaggeration of their severity in order to manipulate others. They tend to develop symptoms in response to perceived distress, or long[-]standing hypochondriasis. Individuals with this pattern tend to have numerous somatic

> complaints that tend to focus on pain [which] are often accompanied by feelings of depression (with feelings of depersonalization and suicidal impulses) and anxiety. Persons who respond in such a manner tend to be conflicted about assuming responsibilities, but tend to do so. They generally have continuing doubts about their own abilities and tend to be indecisive. Repression and denial of emotional problems are characteristic; and they lack insight and resist implications that symptoms are related to emotional causes or conflicts. They tend to turn angry feelings inward, and individual's [sic] with this code pattern tend to have a higher proclivity for substance abuse.

[Filing No. 5-9 at 30-31.] The licensed neuropsychologist diagnosed a history of multiple sclerosis, somatization disorder, major depressive disorder, and anxiety disorder. [Filing No. 5-9 at 31.] The examiner also included rule out diagnoses of malingering and substance abuse disorder. [Filing No. 5-9 at 31.] The examiner recommended that Michael G. begin psychotherapy. [Filing No. 5-9 at 31.]

The ALJ did not confront the neuropsychological evaluation findings including the diagnosis of somatization disorder.[4] The Seventh Circuit has also held that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so

---

[4] The Seventh Circuit opinion, *Sims v. Barnhart*, 442 F.3d 536, 537 (7th Cir. 2006), is instructive concerning a "somatoform disorder" and the "difficult proof issues" that are implicated by such a diagnosis. The court explained that "[t]he problem of proof arises when the symptoms are reported by the claimant but not verified by medical experts." *Id.* Because "if a claimant's symptoms are severe enough to be disabling, the fact that they have no organic cause is irrelevant." *Id.* at 538. In *Sims*, the court affirmed because the record had not been adequately developed to support conversion disorder as a potential basis of the claimant's alleged vision problems. *Id.* at 539. The court noted that "the symptoms of conversion disorder are often precipitated by stress and a psychiatric examination might determine whether the claimant was experiencing or had recently experienced stress." *Id.* (citations omitted). By contrast, the record here had been adequately developed to support the medically determinable impairment such that its functional effects must be considered.

much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny))."

The record was also updated with treatment records showing that Michael G. started formal mental health treatment. On May 10, 2018, he reported to his primary care provider that he dealt with depression and anxiety throughout his life but found it more difficult to control and internalize with age, he thought his anxiety manifest itself as impaired memory, his multiple sclerosis was controlled except "more fatigue with increased worry," he was referred to psychiatry, and he was prescribed a new medication for his anxiety disorder. [Filing No. 5-8 at 41-44.] After starting psychotherapy on August 8, 2018, he worked on coping techniques to deal with complaints of increased anxiety associated with fatigue, a lack of energy to complete tasks, and an inability to shut his mind off to sleep. [Filing No. 5-8 at 75.]

As noted above, the ALJ alluded to the lack of clinical manifestations in the updated treatment records to corroborate the psychological consultative examiner's findings; and the Commissioner argued that the updated evidence did not support Michael G.'s claim. However, the Seventh Circuit has explained that "[w]e cannot accept the agency's argument that the newer mental-health records would not have made a difference because they showed improvement. This argument is based on the ALJ's own assessment of the more recent records. That assessment was not justified under the circumstances of this case." *Moreno*, 882 F.3d at 729 (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Goins*, 764 F.3d at 680 (prohibiting ALJs from "playing doctor" by summarizing the results of a medical examination without input from an expert)). There is sufficient evidence in

10

the updated record to cast doubt as to whether Michael G. could perform work without any mental limitations.

While Michael G. has a skilled employment history that included the needs to remain attentive to focused tasks and interact with others, he testified that had not worked full-time in many years since being diagnosed with multiple sclerosis; he also worked alone during the latter part of his employment. [*See e.g.*, Filing No. 5-2 at 71-72.] The VE listened to Michael G.'s testimony concerning his past work and concluded that it was not consistent with competitive employment. [Filing No. 5-2 at 82.] The updated record detailed above indicated that Michael G.'s increased anxiety, depression, fatigue, memory issues, emotional lability, and annoyance with interactions were interrelated along with his history of multiple sclerosis and newly diagnosed somatization disorder. Accordingly, further consider of Michael G.'s combined impairments, relevant symptoms, and mental functioning is needed on remand.

### 2. *Other Arguments*

Having found remand is needed for further evaluation of whether Michael G.'s mental limitations are properly accounted for in the RFC, the Court declines to address any remaining issues raised on appeal. In particular, the Step Four arguments are rendered moot by the Court's disposition. On remand however, the ALJ should consider the supportive treating opinion evidence—including Michael G.'s primary care physician's letters referencing mental changes associated with his multiple sclerosis—to ensure that Michael G.'s RFC properly accounts for that evidence [*See* Filing No. 5-7 at 80-81.] Additionally, consistent with the Commissioner's motion to supplement the record, the opinion evidence submitted on appeal should be considered on remand to the extent it is relevant. [*See* Filing No. 15-1.]

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Michael G. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 11/25/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel